CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 07 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CAMERON D. DICKERSON, et al., ) | |
| ) | Civil Action No. 7:19CV00802 |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| RANDAL J. DUNCAN, et al., ) | Senior United States District Judge |
| ) | |
| Defendants. ) | |

Plaintiff Cameron D. Dickerson, proceeding pro se, filed a complaint on behalf of himself and the Progressive National Committee against numerous individuals including the Republican National Committee, a Virginia General District Court Judge, and officials working for the Montgomery County, Virginia Commonwealth's Attorney Office and the Montgomery County, Virginia Sheriff's Office. This matter is currently before the court on Dickerson's motion for leave to proceed in forma pauperis. Although the court grants the motion, for the following reasons, the court concludes that the complaint must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## Background

Dickerson states that he is the Chairman of the Progressive National Committee, a political action committee ("PAC"), registered with the Federal Election Commission.[1] In sum, Dickerson alleges that the Defendants "interfer[ed] in [his] election activities," and those of his PAC, and "intentionally forced" him to miss election deadlines, as well as "intentionally conspir[ing] to discredit, defame and distress" him.

---

[1] "A PAC is a business, labor, or interest group that raises or spends money in connection with a federal election, in some cases by contributing to candidates." McCutcheon v. Fed. Election Comm'n, 572 U.S. 185, 193 (2014).

Dickerson alleges that, on April 15, 2019, the Montgomery County Sheriff "made a terroristic threat," which Dickerson reported to the Federal Bureau of Investigation on May 7, 2019. Thereafter, Dickerson claims that on May 10, 2019, Sheriff's deputies came "beating on" his door, falsely claiming to have a search warrant. He does not describe any other action by the deputies, including whether they entered his residence.

In mid-May 2019, Dickerson was "considering running for Sheriff," and also "launching" his campaign for a congressional seat in Virginia. Dickerson alleges that a "Republican Judge . . . pushed" Dickerson's initial arraignment for one week, which forced Dickerson to miss the Democratic Party nomination for Sheriff of Montgomery County. Dickerson alleges that this delay occurred after the current "Republican Sheriff" of Montgomery County purportedly "used a jail snitch" to learn from Dickerson whether he planned to run for Sheriff and, if so, with which political party he would be running.

Dickerson further alleges that in July 2019, the judge overseeing his arraignment and members of the "Republican controlled Montgomery County Commonwealth's Attorney Office" worked together to "create a fake capias"[2] using a "letter of libel" created by other alleged Republicans. Dickerson describes this effort as "an attempt to discredit, deter and defame [his] character and livelihood, putting him in jail again for another month." "Working with" a doctor, these same Defendants "manufactured libel: slander and committed perjury recorded in Circuit Court on October 15, 2019," which kept "him in jail again for another month."

Finally, Dickerson alleges that on November 25, 2019, the Montgomery County Sheriff "chased" him after speaking at a "Board of Supervisors Meeting" in a Montgomery County

---

[2] "In Virginia a capias is the functional equivalent of an arrest warrant." United States v. Hickman, No. 95-5165, 1996 WL 191937, at *1 n.1 (4th Cir. 1996) (citing Va. Code Ann. § 19.2-80).

Government Center. According to Dickerson, the Sheriff and his deputies were "yelling and acting erratic," and the Sheriff had his deputies "put hands" on Dickerson while he purportedly attempted to speak with Democratic colleagues. Dickerson does not describe any physical injuries that arose from this incident, or any other form of physical contact.

He seeks $100,000,000 in damages due in part to a $50,000,000 fundraising shortfall allegedly caused by the Defendants, as well as punitive damages arising from "mental anguish" and other psychological injuries.

### Standard of Review

Under 28 U.S.C. § 1915(e), which governs in forma pauperis proceedings, courts have "a duty to screen initial filings." Eriline Co. v. Johnson, 440 F.3d 648, 656-57 (4th Cir. 2006). Courts "shall dismiss at any time" a complaint that is "frivolous" or "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). A court may dismiss a claim as factually frivolous where the facts alleged are "clearly baseless," a category encompassing allegations that are "fanciful," "fantastic," and "delusional." Neitzke v. Williams, 490 U.S. 319, 325–28 (1989). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 33 (1992).

In reviewing a complaint for dismissal under § 1915(e)(2)(B)(ii), courts apply the same standard used to review a motion for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). Federal courts must construe pro se pleadings liberally. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Like

3

all plaintiffs, a pro se plaintiff must "demonstrate more than a sheer possibility that a defendant has acted unlawfully," and "articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief." Hodge v. Gansler, 547 F. App'x 209, 210 (4th Cir. 2013) (quotation marks omitted).

## Discussion

Dickerson purports to bring claims under the Eighth and Fourteenth Amendments,[3] as well as 18 U.S.C. § 245 related to Defendants "[i]ntimidat[ing] [a] [c]andidate for [e]lected [o]ffice." ECF Nos. 2 & 2-1. Dickerson also makes vague and conclusory allegations of defamation. Id.

The court first looks to Dickerson's statutory claims. 18 U.S.C. § 245 provides for criminal penalties, not a private cause of action. Further, § 245(a)(1) specifically reserves the right of prosecution under that section to United States government officials. Accordingly, the court dismisses with prejudice Dickerson's claims under this statute. See Kelly v. Rockefeller, 69 Fed. App'x. 414, 415 (10th Cir. 2003) ("The district court correctly dismissed plaintiff's claims under 18 U.S.C. § 241 and § 245, for failure to state a claim, because the criminal statutes do not provide for civil causes of action.").

In light of Dickerson's pro se status, the court construes any other remaining election-related claims as arising under the First Amendment and 42 U.S.C. 1985. Dickerson appears to allege that there was a conspiracy amongst Republican officials to time his criminal prosecutions such that Dickerson would miss election deadlines, due to his political affiliation. Dickerson alleges that this conspiracy was facilitated by the Sheriff's use of a "jail snitch" to learn whether Dickerson was running for Sheriff and with which party he would be running, and implemented by a Virginia judge delaying the hearings in the course of Dickerson's criminal prosecution. The

---

[3] While Dickerson cites to the Fourteenth Amendment as a basis for relief, the court believes this statement is best construed as claims arising under the doctrines described elsewhere in this opinion.

4

court believes these allegations are factually frivolous, and therefore worthy of dismissal, under 28 U.S.C. § 1915(e)(2)(B)(i). The court will, however, also analyze Dickerson's claims under Rule 12(b)(6) out of an abundance of caution. Neitzke, 490 U.S. at 329.

The court first looks to Dickerson's election-related claims, which the court construes as arising under 42 U.S.C. § 1985 and the First Amendment. Plaintiffs alleging unlawful intent in conspiracy claims under § 1985 must "plead specific facts in a non-conclusory fashion to survive a motion to dismiss." Gooden v. Howard Cty., Md., 954 F.2d 960, 969–70 (4th Cir. 1992). Dickerson's bald allegations of parallel conduct and conclusory statement that there was a conspiracy are insufficient, without more, to plead a conspiracy. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

In addition, a cognizable First Amendment retaliation claim requires a plaintiff to allege: (1) "that [plaintiff's] speech was protected"; (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech"; and (3) "a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000). In addition, plaintiffs bringing claims of retaliatory prosecution or retaliatory arrest under the First Amendment "must" plead and prove an "absence of probable cause." Hartman v. Moore, 547 U.S. 250, 265–66 (2006); Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019). Here, Dickerson does not satisfactorily plead a lack of probable cause, and fails to properly allege any causal relationship between his political aspirations and the Defendants' actions. The court will therefore dismiss these claims.

The court next looks to Dickerson's Eighth Amendment claims. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments . . . ." U.S. Const. amend. VIII. Eighth Amendment protections attach only "after conviction and sentence." Graham v. Connor, 490 U.S.

5

386, 392 n. 6 (1989). Dickerson only briefly describes two potentially relevant incidents between himself and the Defendants: the May 10, 2019 incident in which Sheriff's deputies "beat on" Dickerson's door, and the November 25, 2019 incident in which deputies "put hands" on Dickerson. Dickerson was in public—not incarcerated—at that time, and thus the Eighth Amendment does not apply to these claims.

Instead, in light of Dickerson's pro se status, the court will construe these claims as arising under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Regarding the May 10 incident, Dickerson fails to allege that the deputies did anything more after knocking on his door, such as actually entering his house, which does not implicate Fourth Amendment rights. See Kentucky v. King, 563 U.S. 452, 471 (2011) (no Fourth Amendment violation based on mere allegation that officers "banged on the door as loud as [they] could"); United States v. Miller, 680 F. App'x 187, 189 (4th Cir. 2017) ("Here, the officers did no more than knock on the door and announce their presence. This was not an actual or threatened violation of the Fourth Amendment."). And regarding the November 25 incident, merely physically touching an arrestee does not constitute excessive force. Connor, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Dickerson has not alleged more than that officers "put hands" on him. The court is bound to dismiss these claims.

Finally, any claims of defamation in Dickerson's complaint arise only under state law. Defamation by a state official, by itself, is insufficient to state a claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693, 712 (1976). Dickerson alleges that at least some of the Defendants are Virginia residents. Accordingly, the court lacks original jurisdiction over these state-law

defamation claims. The court declines to exercise subject matter jurisdiction over Dickerson's remaining claims, having concluded that his federal claims are meritless. 28 U.S.C. § 1367(c)(3) (a court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction).

## Conclusion

For the reasons stated, the court will grant Dickerson's motion for leave to proceed in forma pauperis. However, his complaint will be dismissed, under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).

DATED: This 7th day of January, 2020

_____
Senior United States District Judge